UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KELVIN BROWN,                                                                                           Plaintiff,

v.                                                                          Civil Action No. 3:19-cv-937-DJH-CHL

LOUISVILLE METRO,                                                                                    Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kelvin Brown alleges that his former employer, Defendant Louisville Metro, violated the Americans with Disabilities Act and the Kentucky Civil Rights Act when it terminated his employment in 2017 and 2019.  (Docket No. 1)  Louisville Metro moves for summary judgment, arguing that Brown cannot establish a prima facie case of discrimination or retaliation under the ADA or KCRA.  (D.N. 38)  For the reasons explained below, the Court will deny Louisville Metro's motion.

**I.**

Brown was employed by Louisville Metro as a Youth Program Worker from 1998 until his termination in 2017.  (D.N. 41-1, PageID # 249-50)  Throughout his employment, he suffered from recurrent rhabdomyolysis, a genetic condition that periodically limits his ability to perform physical tasks, often for weeks at a time.  (*Id.*, PageID # 250-52; D.N. 41-2)  In June 2017, Brown's doctor restricted him from working in "[a]dmissions areas and any secure unit" until January 1, 2018, "due to the potential threat of having to physically restrain inmates."  (D.N. 41-2)  To accommodate this restriction, Brown was given a 90-day "modified duty assignment" at the Louisville Zoo, which expired on October 22, 2017.  (*See* D.N. 41-3)  An additional 90-day period

1

of modified duty was available under the applicable collective bargaining agreement. (*See* D.N. 41-4, PageID # 295-96)

Before the expiration of the 90-day period, Louisville Metro sent Brown a list of possible positions to which he could be reassigned to accommodate his disability. (D.N. 41-5, PageID # 302) Brown declined the proposed positions, each of which "either did not accommodate [his] disability, required a significant loss of pay, required a significant loss of benefits, or all of the above." (D.N. 41, PageID # 234 (citing D.N. 41-6; D.N. 41-7)) Brown "specifically requested to be transferred to an open position in Master Control, Transportation, Front Desk, Laundry, [or] Facilities Maintenance," but Louisville Metro did not offer any of those positions to him. (*Id.* (citing D.N. 41-6))

On October 17, 2017, Brown was hospitalized due to a flare-up of his rhabdomyolysis. (*See* D.N. 41-3) Louisville Metro denied his request for medical leave and terminated his employment on November 15, 2017, stating that "all opportunities for accommodations ha[d] been exhausted." (*Id.*, PageID # 290) Brown filed a union grievance, which ultimately led to arbitration and his reinstatement to the position of Youth Program Worker on December 31, 2018. (*See* D.N. 41-4, PageID # 294-96; D.N. 41-8) He was then "temporarily placed in a modified duty assignment at Louisville Metro Parks & Recreation as a Switchboard Operator," and he worked in that position until January 18, 2019, when he was again hospitalized. (D.N. 41-8, PageID # 311; *see* D.N. 41-1, PageID # 255) Brown was eventually offered a position as an Inmate Grievance Counselor, which he accepted; however, the offer was withdrawn after he failed a required polygraph test. (D.N. 41-1, PageID # 258-59; D.N. 41-8)

On May 10, 2019, the arbitrator issued a decision in Brown's favor (D.N. 41-4); on May 16, 2019, Louisville Metro again terminated Brown's employment, citing his inability "to perform

2

the essential functions of [his] position," the absence of a "reasonable accommodation that would allow [him] to perform [his] job," and the failure to find a "suitable accommodation of last resort in the form of an alternate position." (D.N. 41-8)  Brown filed this action in December 2019, asserting claims of disability discrimination and retaliation under the ADA and KCRA. (D.N. 1) Louisville Metro seeks summary judgment on all of Brown's claims. (D.N. 38)

## II.

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1).  The Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).  For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  The moving party bears the burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

As an initial matter, the Court notes—as does Brown (D.N. 41, PageID # 232 n.1)—that although Louisville Metro purports to seek summary judgment on "all claims" (D.N. 38-1, PageID # 222), its supporting memorandum contains no mention of Brown's second termination in May 2019. (*See generally* D.N. 38-1)  Louisville Metro does not address this omission in its reply, which is just over one page in length and devoid of citation to the record or caselaw. (*See* D.N. 42)  Because Louisville Metro has not shown that it is entitled to summary judgment as to claims arising out of Brown's termination in 2019, the Court's summary-judgment analysis will be limited to the 2017 termination.  *See* Fed. R. Civ. P. 56(a), (c); *Celotex Corp.*, 477 U.S. at 325.

3

A.      **Disability Discrimination (Counts I and II)**

Claims of disability discrimination under the ADA and KCRA are analyzed using the same standards. *Bogard v. Univ. of Ky.*, 766 F. App'x 291, 298 (6th Cir. 2019) (citing *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003)). The parties assume that the *McDonnell Douglas* burden-shifting framework applies to Brown's discrimination claims (*see* D.N. 38-1, PageID # 217; D.N. 41, PageID # 237), and Louisville Metro concedes several elements, including "that Brown's disability was a 'but for' cause of" his termination. (D.N. 38-1, PageID # 218) The *McDonnell Douglas* framework is inapplicable, however, in light of Metro's admission that it fired Brown because of his disability:

> When an "employer acknowledges that it relied upon the plaintiff's handicap in making its employment decision . . . [t]he McDonnell Douglas burden shifting approach is unnecessary because the issue of the employer's intent, the issue for which McDonnell Douglas was designed, has been admitted by the defendant . . . and the plaintiff has direct evidence of discrimination on the basis of his or her disability."

*Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016) (alterations and omissions in original) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182 (6th Cir. 1996)).

Brown thus "bears the burden of establishing that he . . . is 'disabled' and 'otherwise qualified' for the position despite his . . . disability: a) without accommodation from the employer; b) with an alleged 'essential' job requirement eliminated; or c) with a proposed reasonable accommodation." *Id.* at 891 (internal quotation marks omitted) (quoting *Monette*, 90 F.3d at 1186). If he makes this showing, the burden then shifts to Louisville Metro to "prov[e] that a challenged job criterion is essential . . . or that a proposed accommodation will impose an undue hardship upon the employer." *Id.* (omission in original) (quoting *Monette*, 90 F.3d at 1186).

Louisville Metro does not dispute that Brown is disabled. (D.N. 38-1, PageID # 217) It argues only that Brown is not "otherwise qualified." (*Id.*, PageID # 218) In support, Louisville

4

Metro points to the Youth Program Worker job description, which lists "Maintains security, order and discipline to prevent disturbance[ and] escapes and ensure the safety of juveniles, staff, and the community" and "Physically restrains juveniles" as examples of work the job entails. (*Id.* (quoting D.N. 38-2, PageID # 223))  Because Brown's physician stated that he must avoid the "potential threat of having to physically restrain inmates," Louisville Metro argues, Brown cannot show that he is "otherwise qualified" for his job. (*Id.*, PageID # 219 (quoting D.N. 38-3))

In response, Brown notes that he successfully performed the job for twenty years despite his disability (D.N. 41, PageID # 238) and that when he was reinstated, it was to the same position.[1] (*Id.* (citing D.N. 41-1, PageID # 254; D.N. 41-4))  Moreover, Brown asserts, a "reasonable accommodation" could have entailed reassignment to another position, *see* 42 U.S.C. § 12111(9)(b), which he requested. (D.N. 41, PageID # 238-39 (citing D.N. 41-6))  Louisville Metro does not address this requested accommodation. (*See* D.N. 38-1, PageID # 218-19)  There is thus a genuine factual dispute as to whether Brown was "otherwise qualified," and Louisville Metro is not entitled to summary judgment on Brown's discrimination claims. *See Ferrari*, 826 F.3d at 891; *see also Celotex Corp.*, 477 U.S. at 325.

**B.     Retaliation (Counts III and IV)**

The parties correctly apply the *McDonnell Douglas* framework to Brown's retaliation claims, which rest on indirect evidence. (*See* D.N. 38-1, PageID # 220-21; D.N. 41, PageID # 239-41)  Thus, Brown "must first demonstrate a prima facie case of retaliation by showing that (1) []he engaged in protected activity under the ADA," (2) Louisville Metro "knew of the protected

---

[1] Brown also cites his deposition testimony "that he was able to perform his job duties." (D.N. 41, PageID # 238 (citing D.N. 41-1, PageID # 282))  The cited testimony, however, referred to Brown's ability to perform the duties of a switchboard operator. (*See* D.N. 41-1, PageID # 281-82)

5

activity," (3) Louisville Metro "took an adverse action against" Brown, and "(4) there was a causal connection between the adverse action and [Brown's] protected activity." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 661 (6th Cir. 2020) (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)) (analyzing ADA and KCRA retaliation claims together under this standard). This initial burden is "not onerous," and once it is met, "the burden of production shifts to [Louisville Metro] to show that it had 'a legitimate, non-discriminatory basis' for the adverse action." *Id.* (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). "If it does so, the burden then shifts back to [Brown] to show by a preponderance of the evidence that [Louisville Metro's] reasons 'were not its true reasons, but were a pretext for' retaliation." *Id.* (quoting *Nguyen*, 229 F.3d at 563). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry." *Id.* (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

Notwithstanding its recognition of the applicable evidentiary standard, Louisville Metro primarily attacks purported deficiencies in Brown's complaint. (*See, e.g.*, D.N. 38-1, PageID # 220 ("In the Complaint, Brown also fails to identify the protected activity in which he was engaged." (internal citation omitted), 221 ("Brown makes no allegation of fact to establish a genuine issue of fact regarding pretext . . . .")) At the summary-judgment stage, the moving party must point to evidence in the record to show that there is no genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Moreover, as Louisville Metro acknowledges (D.N. 38-1, PageID # 220), the record reflects that there was a protected activity by Brown of which Louisville Metro was aware, namely his request for accommodation. *See Shelby Cnty.*, 711 F.3d at 698 (observing that "[b]oth this circuit and most others agree that requests for accommodations are protected acts" under the

ADA (citations omitted)). Louisville Metro further concedes, "assuming that Brown's request for an accommodation is the [relevant] protected activity . . . that temporal proximity can be adopted by the district court as evidence of a causal connection sufficient to withstand a motion for summary judgment." (D.N. 38-1, PageID # 220)

This leaves Louisville Metro's contention that its November 2017 Request for Termination letter to Brown "clearly articulates a non-pretextual justification for termination of Brown's employment." (*Id.*, PageID # 221) Louisville Metro asserts—again without citation to the record and apparently referring to the complaint—that "Brown makes no allegation of fact to establish a genuine issue of fact regarding pretext and Louisville Metro is entitled to summary judgment as a matter of law." (*Id.*) The cited letter states that "termination is warranted" because "all opportunities for accommodations have been exhausted." (D.N. 38-4, PageID # 227)

"To survive a motion for summary judgment, [Brown] need not definitively prove that [Louisville Metro]'s reason is pretextual, but rather 'must prove only enough to create a genuine issue as to whether the rationale is pretextual.'" *Ferrari*, 826 F.3d at 895 (emphasis removed) (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 260 (6th Cir. 2011)). He can do this by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [Louisville Metro]'s action, or (3) that they were insufficient to motivate [Louisville Metro]'s action." *Id.* (quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)); *see Baker v. Windsor Republic Doors*, 414 F. App'x 764, 778 (6th Cir. 2011) (citing *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 486 (6th Cir. 2010)) (applying this standard to ADA retaliation claim).

In response to Louisville Metro's motion, Brown points to emails between union counsel Andrew Burcham and Louisville Metro Assistant Director of Human Resources Adrienne

7

Henderson in which both sides acknowledged that at the time of his termination, Brown had two days of modified duty remaining and could have been granted an additional 90 days of modified duty. (D.N. 41, PageID # 241 (citing D.N. 41-4, PageID # 295-96)) Before the end of that 92-day period, Brown notes, his medical restrictions would have expired, and he could have returned to work. (*Id.*, PageID # 241 (citing D.N. 41-2)) Thus, even assuming that Louisville Metro adequately identified a legitimate, non-retaliatory reason for purposes of summary judgment, Brown has demonstrated a genuine issue of material fact as to whether Louisville Metro's stated reason for his termination—i.e., that "all opportunities for accommodations ha[d] been exhausted" (D.N. 38-4, PageID # 227)—was pretextual. *See Ferrari*, 826 F.3d at 895. Summary judgment is therefore not warranted on Brown's retaliation claims. *See Kirilenko-Ison*, 974 F.3d at 661.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Louisville Metro's motion for summary judgment (D.N. 38) is **DENIED**.

March 31, 2022

David J. Hale, Judge
United States District Court